# In the United States Court of Federal Claims

No. 23-1876C
Filed: March 25, 2026
FOR PUBLICATION

|  |
|---|
| **JUGGLER DAVE AND FRIENDS, LLC,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**UNITED STATES,**<br><br>*Defendant.* |

*Dennis Evans*, Dayes Law Firm, Phoenix, AZ, for the plaintiff.

*Richard J. Markel*, Tax Division, U.S. Department of Justice, Washington, DC, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The CARES Act established an Employee Retention Credit ("ERC"), which was "a refundable tax credit for certain eligible businesses and tax-exempt organizations that had employees and were affected during the COVID-19 pandemic." *Internal Revenue Service*, Employee Retention Credit, https://www.irs.gov/coronavirus/employee-retention-credit (last visited February 27, 2026). The ERC originally applied only to wages paid after March 12, 2020, and before January 1, 2021. Through a series of subsequent laws, the credit was extended to cover wages paid through the end of 2021.

On July 4, 2025, Public Law 119-21 ("OBBBA"), which established a new time bar for claiming the ERC, was enacted. Section 70605(d) of the OBBBA provides that "no refund with respect to [the ERC] shall be made, after the date of the enactment of this Act, unless a claim for such credit or refund was filed by the taxpayer on or before January 31, 2024." 139 Stat. 72, 287-88.

The plaintiff, Juggler Dave and Friends, LLC, is an Ohio business whose claim is affected by the ERC time bar enacted by the OBBBA. The plaintiff sued the United States, acting through the Internal Revenue Service ("IRS"), on February 25, 2025, seeking ERCs for the first three quarters of 2021 (designated as Q1, Q2, and Q3). The plaintiff's claims for ERCs for Q1 and Q2 of 2021 had been filed with the IRS before January 31, 2024. The defendant paid those ERCs, and the related claims were dismissed. The claim for an ERC for Q3 remains pending due to the intervening enactment of the OBBBA's time bar.

The defendant has moved to dismiss the remaining claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), invoking the OBBBA's retroactive deadline for seeking an ERC as a bar to the plaintiff's Q3 claim. The plaintiff argues that the retroactive application of the OBBBA's time bar violates due process and is therefore invalid as applied to the plaintiff's claim.

The OBBBA's retroactive time bar for claiming the ERC is supported by and rationally related to the legitimate legislative purpose of preventing tax fraud. The retroactive application of section 70605(d), therefore, does not violate due process, and the plaintiff's Q3 ERC claim, filed after the statutory deadline, must be dismissed. The defendant's motion to dismiss is granted.

## I.   FACTUAL BACKGROUND[1]

The plaintiff is an Ohio-based limited-liability corporation. (ECF 1 at ¶ 3.) David Willacker is the LLC's sole member and owner, and the LLC employs fewer than 500 full-time employees. (*Id.* at ¶¶ 6, 35.) Due to the COVID-19 pandemic, the plaintiff's 2021 gross receipts for the first and second quarters of 2021 dropped significantly compared to the corresponding quarters in 2019. (*Id.* at ¶¶ 18-25.) The plaintiff alleges that its gross receipts in Q1 2021 were only 24.75% of its gross receipts in Q1 2019. (*Id.* at ¶¶ 18–20, 25). Similarly, the plaintiff's gross receipts in Q2 2021 were allegedly only 49.06% of its gross receipts in Q2 2019. (*Id.* at ¶¶ 21–23, 25). For the first two quarters of 2021, the plaintiff provided evidence of the decline in gross receipts by filing quarterly payroll tax returns on IRS Form 941. (*Id.* at ¶¶ 7–9).

On or about May 1, 2024, the plaintiff amended its prior returns by submitting an IRS Form 941-X for each of the first three quarters of 2021. (*Id.* at ¶ 10.) The plaintiff claimed three ERCs in 2021: $47,748.73 for Q1; $65,142.74 for Q2; and $218,673.56 for Q3.

To qualify for the ERC, an employer must have suffered a decline in revenue in any quarter of 2021 of at least 20 percent compared to its 2019 gross receipts from the same quarter.[2] 26 U.S.C. § 3134(c)(2)(A)(ii)(II). Alternatively, an employer may qualify for the ERC through the alternative quarter test. This test allows an employer to qualify for an ERC by comparing gross receipts across quarters, for example using a gross-receipts comparison from Q2 of 2019 and 2021 to show eligibility for an ERC in Q3 of 2021. 26 U.S.C. § 3134(c)(2)(B).

The plaintiff alleges that it is entitled to ERCs for Q1 and Q2 of 2021 based on the decline in its gross receipts between the respective quarters in 2019 and 2021 and is entitled to an ERC for Q3 of 2021 based on the alternative quarter test. (ECF 1 at ¶¶ 24-25).

---

[1] The facts outlined here reflect the allegations of the complaint. For purposes of resolving the motion, the facts alleged in the complaint are assumed to be true, and this recitation of the facts therefore makes no findings of fact.

[2] A business is also required to have less than 500 employees and be involved in the carrying on of a trade or business during the calendar quarter in question. The plaintiff satisfied these other requirements, that are not at issue here. 26 U.S.C. § 3134(c)(2)(A)(ii) & (3)(A)(ii).

## II.   PROCEDURAL HISTORY

On April 26, 2021, July 26, 2021, and October 25, 2021, the plaintiff filed timely quarterly payroll taxes using Form 941 for Q1, Q2, and Q3 of 2021, respectively and paid the taxes due. (*Id*. at ¶¶ 7-9.) On May 1, 2024, the plaintiff filed three Forms 941-X, claiming the ERC for Q1, Q2, and Q3 of 2021. (*Id*. at ¶ 10.) On February 25, 2025, more than six months after filing its three Forms 941-X without a response from the IRS, the plaintiff filed its complaint seeking the ERC payments.

On May 22, 2025, the plaintiff submitted an offer to settle the case in its entirety, and the case was stayed. While the case was stayed, the IRS paid the plaintiff's ERC claims for Q1 and Q2 of 2021. During the stay and the settlement discussions, the OBBBA, establishing the new time bar for submission of claims for ERCs retroactive to January 31, 2024, was enacted. Under the OBBBA, the defendant determined that the ERC claim for Q3 of 2021 could not be paid, because the plaintiff's ERC claim had been filed with the IRS after January 31, 2024.

On January 7, 2026, the defendant moved to dismiss the remaining claim for the Q3 2021 ERC under RCFC 12(b)(6). On February 2, 2026, the plaintiff filed its response to the motion to dismiss, and on February 20, 2026, the defendant filed its reply. Oral argument was held on March 25, 2026.

## III.   JURISDICTION

Section 1346(a)(1) of 28 U.S.C. confers on the Court of Federal Claims jurisdiction, concurrent with the district courts, for "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected. . . ."

Jurisdiction to consider claims for tax refunds is limited by 26 U.S.C. § 7422(a), which provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected … until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

For a court to have jurisdiction over a tax-refund claim, this statute requires that a claimant first "duly file" an administrative claim with the IRS for a refund. *See United States v. Dalm*, 494 U.S. 596, 602 (1990). The applicable regulations require that for a claim to be "duly filed," it "[m]ust set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof. "In addition, after a taxpayer duly files an administrative claim for refund or credit, he or she must wait '6 months from the date of filing the claim,' or until the IRS renders a decision on the claim, before filing suit under Section 7422(a) in this court." *Dumont v. United States*, 85 Fed. Cl. 425, 428 (quoting 26 U.S.C. § 6532(a)(1)), *aff'd*, 345 F. App'x 586 (Fed. Cir. 2009), *cert. denied*, 559 U.S. 1101 (2010).

3

The plaintiff filed its refund claim in May 2024 and filed its complaint here in February 2025, more than six months after filing the claim with the IRS. The plaintiff's claims to the IRS satisfied the regulatory requirements to be duly filed. Because the plaintiff filed suit after waiting more than six months after duly filing its claim for the ERCs, the court has jurisdiction to hear the plaintiff's remaining claim.

## IV.   STANDARD OF REVIEW

Dismissal for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering dismissal under RCFC 12(b)(6), a court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiffs are entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A court is allowed to consider not only "the allegations in the complaint [but] may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (cleaned up) (quotation omitted).

## V.   DISCUSSION

The dispute over the plaintiff's 2021 Q3 ERC revolves around section 70605(d) of the OBBBA, which added the following provision to the CARES Act:

> Notwithstanding section 6511 of the Internal Revenue Code of 1986, no credit under section 3134 of the Internal Revenue Code of 1986 shall be allowed, and no refund with respect to any such credit shall be made, after the date of the enactment of this Act, unless a claim for such credit or refund was filed by the taxpayer on or before January 31, 2024.

On its face, this provision forecloses the plaintiff's remaining claim by disallowing any claim for the ERC when an employer submitted the claim later than January 31, 2024. The plaintiff submitted its claim for the 2021 Q3 ERC in May 2024. Therefore, the plaintiff's claim was filed too late under the OBBBA's ERC time bar.

As to the retroactive application of the deadline to the plaintiff, the defendant argues that Congress may revoke tax credits at any time. *See Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 549 (1983). In 2025, Congress amended the tax code to restrict ERC refunds to claims filed before January 31, 2024. The defendant argues that courts are required to apply the new tax laws to pending cases. Because the plaintiff filed its refund claim after January 31, 2024, and the case was still pending at the time the law was amended, the plaintiff's remaining claim must be dismissed under the new time bar.

The plaintiff concedes that Congress has the authority to amend tax laws to apply retroactively but contends that section 70605(d) violates the due process clause of the fifth

4

amendment as applied to its claim.  Specifically, the plaintiff argues that: (1) the 16-month retroactive time bar is excessive; (2) the amendment lacks a curative rationale; (3) the retroactive change is not tailored to prevent fraud; (4) the plaintiff possesses a property interest in its pending refund claim; and (5) when the plaintiff amended its 2021 Form 941 in May 2024, it reasonably relied on the existing law, which had no time bar to claim the ERC, and it lacked notice that Congress would soon amend the law to add a time bar.  The plaintiff relies on *United States v. Carlton*, 512 U.S. 26, 32–34 (1994), to support its arguments.  The plaintiff derives from *Carlton* the conclusion that a retroactive amendment to a tax provision only satisfies due process if the legislation has a rational purpose, is not arbitrary, and the period of retroactivity is not excessive.

Statutes "adjusting the burdens and benefits of economic life" are presumed constitutional.  *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976).  A retroactive tax statute satisfies due process if "'the retroactive application of [the] statute is supported by a legitimate legislative purpose furthered by rational means.'"  *Carlton*, 512 U.S. at 30-31 (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729-730 (1984)).

Retroactive tax legislation is a longstanding and well-recognized feature of federal law.  The Supreme Court has repeatedly upheld against due process challenges the authority of Congress to enact tax laws with retroactive effective dates.  *See, e.g., Carlton*, 512 U.S. at 30, 32–33; *United States v. Hemme*, 476 U.S. 558 (1986); *United States v. Darusmont*, 449 U.S. 292 (1981); *Welch v. Henry*, 305 U.S. 134 (1938); *Milliken v. United States*, 283 U.S. 15 (1931).

Under the rational basis standard, a retroactive tax law is constitutional if supported by a legitimate legislative purpose and rational means.  *Carlton*, 512 U.S. at 31; *R.A. Gray*, 467 U.S. at 729–30.  If the statute is supported by plausible reasons, the law will be upheld.  *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

Synthesizing Supreme Court rulings and its own precedents, the Federal Circuit has distilled five factors to be considered in assessing the rational basis of retroactive statutes, including tax statutes, against a due process challenge: (1) whether the provision is "wholly new," (2) resolves uncertainty in the law (curative in nature), or (3) is remedial; (4) the length of the retroactivity period; and (5) whether affected parties had notice of the potential change before engaging in the regulated conduct.  *GPX Int'l. Tire Corp. v. United States*, 780 F.3d 1136, 1142 (Fed. Cir. 2015) (citations omitted).  No single factor is "dispositive of the due process analysis."  *Id*. at 1143.

### A. "Wholly New Tax"

A retroactive tax that affects an already existing tax regime is likely to satisfy due process.  While the Supreme Court has occasionally invalidated retroactive taxes under the due process clause, it has done so primarily in cases involving a "wholly new tax."  *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1342 (Fed. Cir. 2001) (citing *Carlton*, 512 U.S. at 34).  A "wholly new tax" imposes a new and previously nonexistent tax liability on completed transactions or property interests that were not subject to taxation at the time they occurred, as opposed to a retroactive tax law that merely amends or limits the operation of an existing tax law.  *Hemme*, 476 U.S. at 568.

The plaintiff argues that the ERC was final because Congress had already enacted legislation to bar new ERC filings.  Accordingly, the time bar enacted in the OBBBA effectively

5

constitutes a "wholly new tax."  The defendant responds that even though the IRS had stopped accepting new ERC claims after April 15, 2025, it was still processing pending ERC claims at the time the OBBBA was enacted.  The ERC was thus still administratively active, and the action by Congress affecting open ERC claims did not establish a "wholly new tax" but merely altered the rules related to an existing tax credit that taxpayers could no longer claim.

The time bar acts to restrict taxpayers from claiming the previously available credit but does not create new or additional tax liability for any taxpayer, including the plaintiff.  Viewed in this light, the time bar cannot be considered a "wholly new tax," as defined in *Hemme* because it simply brought "about [ ] changes in operation of the tax laws."  476 U.S. at 568. The retroactive application of the time bar simply modified the period within which a taxpayer could claim the ERC and did not create a "wholly new tax."  *See GPX*, 780 F.3d at 1142.  This factor supports the constitutional application of the OBBBA time bar to the plaintiff's pending ERC claim.

### B.  The amendment is curative and remedial in nature

The second and third factors of the *GPX* test are related and will be considered together. A retroactive amendment to a tax statute satisfies due process when adopted as a curative or remedial measure.  *Kitt v. United States*, 277 F.3d 1330, 1335 (Fed. Cir. 2002) (citing *Carlton*, 512 U.S. at 31).  Legislation that cures a drafting error or closes an unintended loophole is particularly appropriate for retroactive application.  *See Carlton*, 512 U.S. at 31–32.  As the Federal Circuit has noted, such curative or remedial legislation may be constitutional even with a lengthy retroactive period.  *Kitt*, 277 F.3d at 1335; *see also Wiggins v. Com'r*, 904 F.2d 311, 316 (5th Cir. 1990) (citing *Canisius College v. United States*, 799 F.3d 18, 27 (2d Cir. 1986)).

In July 2023, the House Ways and Means Committee held a hearing on widespread ERC fraud. *The Employee Retention Tax Credit Experience: Confusion, Delays, and Fraud: Hearing before Oversight Subcomm. of the H. Comm. on Ways & Means*, 118th Cong. H.R. Hrg. No. 118-0S02 (2023).  In September 2023, the IRS announced a moratorium on processing ERC claims to prevent fraudulent claims.  *Internal Revenue Service*, Press Release IR-2023-169, https://www.irs.gov/newsroom/to-protect-taxpayers-from-scams-irs-orders-immediate-stop-to-new-employee-retention-credit-processing-amid-surge-of-questionable-claims-concerns-from-tax-pros (last visited Feb. 27, 2026).  Members of both chambers of Congress later introduced bills restricting ERC refunds or credits to claims filed on or before January 31, 2024. *The Tax Relief for American Families and Workers Act of 2024*, H.R. 7024, 118th Cong. (2024); *ERTC Repeal Act of 2024*, S. 5079, 118th Cong. (2024).  The House passed H.R. 7024 on January 31, 2024, but the Senate did not act on the legislation.  170 Cong. Rec. H343 (Jan. 31, 2024); 170 Cong. Rec. S5749 (Aug. 1, 2024).

Viewed against this backdrop of legislative and administrative concern over fraud involving ERCs, by the time the plaintiff applied for the ERC for the first three quarters of 2021, it knew or should have known that Congress was considering a time bar on ERC claims. Although none of the various legislative proposals to enact a time bar on ERC applications was enacted during the 118th Congress, an identical provision became law in the OBBBA, P.L. 119-211, enacted by the 119th Congress and signed into law on July 4, 2025.

The plaintiff contends the time bar lacks a curative or remedial purpose because it does not correct a drafting error or an unintended consequence of the ERC.  The legislative purpose of the provision, however, supports the defendant's argument that the time bar aims to prevent

6

fraud by barring claims that were no longer justified two to three years after the worst effects of the COVID-19 pandemic.

The defendant analogizes this case to *Valero Marketing & Supply Co. v. United States*, No. 5:19-cv-00328, 2020 WL 10052851 (W.D. Tex. July 31, 2020), in which the court upheld against a due process challenge the retroactive application of a law barring a taxpayer's claim for the alternative-fuel-mixture tax credit. There, the district court held the amendment was consistent with due process because, without it, the original provision would have resulted in significant and unanticipated revenue loss. *Id.*, 2020 WL 10052851, at *2, *8 (quoting *Carlton*, 512 U.S. at 32). Congress may seek to prevent fraud and the attendant revenue loss arising as an unintended consequence of a tax-credit program by limiting the tax credit or otherwise reforming it retroactively without running afoul of the due process clause.

The plaintiff argues that the ERC time bar is not tailored to prevent fraud. Such an argument misses the mark. The application of a retroactive tax amendment is subject only to rational basis review, not strict or intermediate scrutiny. To satisfy this standard, a retroactive tax law need only be "supported by a legitimate legislative purpose furthered by rational means." *Carlton*, 512 U.S. at 30–31 (quoting *R.A. Gray*, 467 U.S. at 733). If there are "plausible reasons" to support the congressional enactment, the law will survive. *Fritz*, 449 U.S. at 179.

The House Ways and Means Committee Report explaining the purpose of H.R. 7024 explained that the ERC claims were "fraud-ridden," and the program needed to be eliminated to avoid waste. H.R. Rep. No. 118-353, pt. 1, at 94 (2024). The Ways and Means Committee explained that disallowing new and amended ERC claims after January 2024 would limit fraud and abuse of the tax system. *Id.* While neither H.R. 7024 nor S. 5079 was enacted during the 118th Congress, the same provision imposing a time bar on ERC claims found in those two bills was incorporated into the OBBBA.

The history underlying enactment of the ERC time bar reflects that the purpose of the provision is to prevent fraud and abuse related to the ERC. It is not an irrational choice for Congress to disallow belated claims, even if legitimate, after a cutoff date to help minimize the cost of fraudulent claims. The plaintiff must show that this justification is itself implausible and not merely unfair to legitimate applicants. Given the lengthy consideration Congress gave to the scope of ERC fraud and the need to address and limit that fraud, the approach Congress took is not implausible. These second and third factors of the *GPX* test support the constitutional application of the OBBBA's ERC time bar to the plaintiff.

### C. *The length of the period of retroactivity*

The Federal Circuit recognizes that the length of the retroactive period is a relevant factor in evaluating whether a change to a tax law violates due process, but it has noted that there is no fixed limit on retroactivity. *GPX*, 780 F.3d at 1142. The plaintiff contends that the 16-month retroactive ERC time bar "far exceeds periods upheld in Supreme Court precedent" and courts have only upheld retroactive tax laws that were applied within the same calendar year. The opposite is true. Courts have permitted even longer periods of retroactive applicability. As long as 95 years ago, in *Milliken*, the Supreme Court upheld a two-year lag between a transaction and the challenged law's effective date, and a four-year lag before the tax was due. 283 U.S. at 21.

*Milliken*'s rationale has not been undercut, and courts have continued to apply it. For example, in both *Licari v. Commissioner* and *Canisius College,* the Ninth and Second Circuits

upheld four-year periods of retroactivity from separate tax statutes. *Licari v. Com'r,* 946 F.2d 690, 695 (9th Cir. 1991); *Canisius College,* 799 F.2d at 26–27. In *GPX*, the Federal Circuit upheld a retroactive period of "a little over five years," while citing two Supreme Court cases that had upheld retroactive periods of six and seven years. 780 F.3d at 1143 (citing *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 184-86 (1992); *United States v. Heinszen & Co.*, 206 U.S. 370, 378 (1907)).

As the Second Circuit explained, the length of the retroactive period "should be considered merely as a factor" in the overall assessment of the constitutionality of the legislation, and "'the nature of the [tax] and the circumstances in which it is laid'" are more informative to its constitutionality than the length of time retroactively affected. *Canisius College*, 799 F.2d at 26-27 (quoting *Welch*, 305 U.S. at 147).

*Canisius College* involved retroactive legislation that had merely ratified prior administrative practice, 799 F.2d at 26, and is therefore not identical to the case at bar. Closer to this case is Judge Bruggink's decision in *Atcheson, Topeka & Santa Fe Ry. Co. v. United States*, 61 Fed. Cl. 501 (2004), in which a retroactive tax statute enacted in 1989 eliminated refunds previously due to the plaintiff on taxes paid between 1983 and 1986. *Id.* at 503. The retroactive impact of the statute at issue there was found not to violate due process. *Id.* at 507-09. Judge Bruggink's rationale in that case applies with equal force to the plaintiff's due process challenge here.

An extended period of retroactivity may in some circumstances cross a line and violate due process, but retroactive tax legislation extending much further into the past than the one at issue here has been upheld consistently against due process challenges by the Supreme Court and the courts of appeals. Against those cases, the retroactive period involved in this case is modest and cannot be said to undermine the plaintiff's reliance interests to such a degree that it violates due process.

### D. Notice and Reliance

Finally, notice and reliance interests are relevant to the analysis of the constitutionality of retroactive tax legislation. Both Congress and the IRS provided notice as early as 2023 of possible changes to the ERC. In 2023, the IRS widely publicized ERC fraud and announced a moratorium on processing such claims. That same year, Congress proposed restrictions on ERC claims, including a time bar effective as early as January 2024. Employers and their tax advisors were on notice that potential changes, including an application deadline, were afoot for the ERC in 2023. As noted above, legislation imposing a time bar of January 31, 2024, on ERC applications was even approved and reported out of the House Ways & Means Committee in January 2024.

As for reliance, the plaintiff did not claim an ERC when filing its original tax return for Q3 2021 or in the following months or years. Instead, it waited more than two and a half years – until May 2024 – to file an amended return seeking the ERC. Given this delay, the plaintiff cannot credibly claim reliance. Section 70605(d) merely barred the plaintiff from receiving a credit that it did not originally seek. True, the plaintiff certainly hoped to receive the credit at the time it filed its amended return in May 2024, but it could have no reliance interest that Congress would not amend the law and bar such a belated claim; indeed, Congress had proposed such a time bar the previous year.

8

*E. Conclusion*

The OBBBA's retroactive time bar limiting the payment of ERC refund claims to those filed before January 31, 2024, aligns with longstanding principles governing retroactive tax legislation.  The law does not impose a wholly new tax but merely modifies the operation of an existing tax credit.  The measure is curative and remedial – addressing widespread fraud, protecting public revenue, and bringing finality to pandemic-era relief programs.  Courts have upheld similar and even longer periods of retroactivity.  Moreover, the legislative record demonstrates that affected taxpayers were or should have been aware of possible changes to the ERC, including adoption of a time bar, long before Congress enacted the time bar that affected the plaintiff's remaining ERC claim.  While the plaintiff raises concerns about its reliance on the prior law and the unfairness of the retroactive time bar, neither the Constitution nor Supreme Court precedent confers a vested right to tax credits or guarantees perpetual reliance on prior tax laws and regulations.

Under these circumstances, applying the factors outlined by the Supreme Court and the Federal Circuit in *GPX*, the OBBBA's retroactive time bar on applying for ERCs is rationally related to a legitimate legislative purpose and therefore meets the rational basis test.  Accordingly, the retroactive application of section 70605(d) does not violate due process, and the plaintiff's claim, filed after the statutory deadline, must be dismissed.

## VI.    CONCLUSION

Under section 70605(d) of P.L. 119-21, a taxpayer cannot receive an ERC for any claim filed after January 31, 2024.  The retroactive application of this section adheres to the due process standard for retroactive tax statutes.  Thus, because the plaintiff filed its request for an ERC for Q3 of 2021 after the January 31, 2024, cut-off date, it is not entitled to relief and has failed to state a claim.  The motion to dismiss under RCFC 12(b)(6) is granted.  A separate order filed concurrently with this opinion will direct the entry of judgment.

s/ Richard A.  Hertling

**Richard A.  Hertling**
**Judge**